IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PLS FINANCIAL SERVICES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-3079-L** |
| | § | |
| **AMAZING CONTRACTORS SERVICES, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Default Judgment ("Motion") (Doc. 17), filed September 30, 2021. After careful consideration of the Motion, brief in support (Doc. 19), pleadings, record, evidence, and applicable law, the court **grants** the Motion (Doc. 17).

**I.   Background**

On December 31, 2019, PLS Financial Services, Inc. ("PLS" or "Plaintiff") filed its Original Complaint against Amazing Contractors Services, Inc. ("Amazing Contractors" or "Defendant"), as the "drawer" of three dishonored checks, alleging Amazing Contractors: (i) violated §§ 3.302, 3.414 of the Texas Business and Commerce Code by failing to pay PLS the face value of the checks, totaling $146,728; and (ii) breached a contract with PLS, the holder in due course of the checks, by failing to perform or tender performance on them.

On February 18, 2020, summons was issued as to Amazing Contractors, and on May 12, 2020, summons was returned executed, confirming Amazing Contractors was served with process on May 7, 2020. Under Federal Rule of Civil Procedure 12(a)(1)(B), therefore, Amazing Contractors had twenty-one (21) days—until May 28, 2020—to file an answer or otherwise respond.

On September 15, 2020, before Amazing Contractors filed any responsive pleading or otherwise entered an appearance in this case, PLS moved for the Clerk's entry of default and the court's entry of default judgment. On July 21, 2021, this court issued a Memorandum Opinion and Order denying PLS's Motion for Default Judgment without prejudice. *See* Mem. Op. & Order (Doc. 11). Specifically, the court concluded that the Original Complaint did not contain sufficient "allegations from which it could reasonably infer that PLS was entitled to relief from Amazing Contractors," as there were no allegations that PLS Check Cashers of Texas, Inc. (the entity to whom Amazing Contractors allegedly presented the three checks) assigned the three checks made the basis of this action to PLS. *Id.* at 6.

On July 30, 2021, PLS filed a First Amended Complaint, the live pleading, reiterating its claims against Amazing Contractors and including allegations and documentation concerning the assignment of the right, title, and interest in the three checks from PLS Check Cashers of Texas, Inc. to PLS, allegations that were lacking in the Original Complaint. Specifically, PLS included allegations that on December 13, 2019, "PLS Check Cashers assigned, transferred, and conveyed all right, title, and interest arising from or relating to the checks" to it. First Am. Compl. ¶ 15 (Doc. 12). Further, PLS alleged Amazing Contractors violated §§ 3.302 and 3.414 of the Texas Business and Commerce Code and breached the contract between the parties by wrongfully dishonoring the three checks. *See id.* ¶¶ 16-19. Along with the First Amended Complaint, PLS provided a business records affidavit with true and correct copies of the assignment (*see* Ex. E) and of the three checks in question. *See* Ex. A-1 (Check No. 2610 for $48,958; Ex. A-2 (Check No. 2623 for $49,895); and Ex. A-3 (Check No. 2313 $47,875). In addition, PLS requested an award of attorney's fees, costs, prejudgment interest, and postjudgment interest. *Id.*

On August 3, 2021, the clerk issued the summons to Amazing Contractors and, on August 26, 2021, the summons was returned executed, confirming Amazing Contractors was served with process on August 25, 2021. Thus, under Federal Rule of Civil Procedure12(a)(1)(B), Amazing Contractors had twenty-one (21) days—until September 16, 2021—to file an answer or otherwise respond to the Amended Complaint. Amazing Contractors never filed an answer and did not otherwise respond to the Amended Complaint.

On September 30, 2021, PLS moved for entry of default and, separately, for a default judgment on its claims against Amazing Contractors for nonpayment of the checks. On October 1, 2021, the clerk of court entered default against Amazing Contractors. *See* Clerk's Entry of Default (Doc. 20). The court now turns to PLS's Motion for Default Judgment.

## II. Analysis

### A. Legal Standard - Default Judgment

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id.*; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The clerk of court has entered a default against Amazing Contractors. *See* Clerk's Entry of Default (Doc. 20).

### B. Sufficient Basis in the Pleadings

Based upon the pleadings and information in the record, the court finds that Amazing Contractors is not a minor, incompetent person, or member of the United States military. Amazing Contractors, by failing to answer or otherwise respond to Plaintiff's First Amended Complaint, has admitted the well-pleaded allegations of the First Amended Complaint and is precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). Stated differently, a "defendant is not held to admit

**Memorandum Opinion and Order – Page 3**

facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). Accordingly, Amazing Contractors may not contest the "sufficiency of the evidence" on appeal but "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id.*

Based on the well-pleaded allegations in Plaintiff's First Amended Complaint (Doc. 12), which the court accepts as true, and the record in this action, the court determines for these reasons and the reasons herein explained that Amazing Contractors is in default, and that PLS is entitled to a default judgment on its claims that Amazing Contractors violated §§ 3.302 and 3.414 of the Texas Business and Commerce Code and breached the contract between the parties arising from the wrongful dishonor of three checks issued by Amazing Contractors.

**C.   Damages**

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citations omitted). In the context of a default judgment, "[d]amages may not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); however, "[w]he[n] the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing in unnecessary." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 2009).

PLS seeks $146,728 in actual damages representing the face value of the three (3) dishonored checks. PLS's pleadings and evidence establish Amazing Contractors' wrongful dishonor of the three checks totaling $146,728; that PLS was the assignee of all right, title, and interest arising from or relating to the checks from PLS Check Cashers; and that PLS took these checks for value, in good faith, and without notice of staleness, prior dishonor, outstanding claims,

or forgery. As such, the pleadings and evidence establish that PLS accepted these checks as a "holder in due course" as § 3.302 of the Texas Business & Commerce Code defines the term. Amazing Contractors' act of dishonoring the three checks constitutes a violation of §§ 3.302 and 3.413 of the Texas Business & Commerce Code. Moreover, under Texas law, "a suit by a check's holder against its drawer under section 3.414 is a claim on a contract." *½ Price Checks Cashed v. United Automobile Ins. Co.*, 344 S.W.3d 378, 381 (Tex. 2011).

The pleadings and evidence also establish that PLS requested payment from Amazing Contractors of the amounts of the checks, but Defendant failed to submit payment or provide any explanation for its continued failure to pay the amount owed; that Amazing Contractors breached its contractual obligation; and that, as a result of its failure to pay, PLS has suffered damages in the amount of $146,728.[1]

Amazing Contractors is, therefore, liable for violating §§ 3.302 and 3.413 of the Texas Business & Commerce Code and liable for breach of contract, and the court finds that the amount requested by PLS ($146,728) is supported by the evidence. Because the amount of damages can be determined with certainty by reference to the pleadings and supporting documents, the court concludes that a hearing is unnecessary. Accordingly, PLS is entitled to recover from Amazing Contractors **$146,728** in actual damages.

### D. Attorney's Fees

PLS seeks $15,675 in reasonable attorney's fees, as requested in the First Amended Complaint. This court had jurisdiction to adjudicate PLS's claims under the federal diversity jurisdiction statute, 28 U.S.C. § 1332. As the Fifth Circuit has made clear, "[s]tate law controls

---

[1] In Texas, the elements for breach of contract are: (1) a valid contract; (2) the plaintiff's performance of his or her contractual obligations; (3) breach by the defendant; and (4) damages caused by the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

**Memorandum Opinion and Order – Page 5**

both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Thus, where state law—in this case, that of Texas—governs the merits of the action, Texas law also controls a later award of attorney's fees. *Id.* Texas law dictates that this court employ the "lodestar" method of calculating those fees. *Rohrmoos Venture v. UTSW DVA Healthcare,* 578 S.W.3d 469, 498 (Tex. 2019) ("[W]e intend[] for the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed.").

Under Texas law, applicable in this diversity case, as the prevailing party on its breach of contract claim, PLS is entitled to recover reasonable and necessary attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001(8); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("Under Texas law, when a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)."). "Although courts should consider several factors when awarding attorney's fees, a shorthand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the Texas Supreme Court identified the following factors to determine the reasonableness of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment for the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

**Memorandum Opinion and Order – Page 6**

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citation omitted).[2]

The applicant is not required to present evidence on all of the factors, however. *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Id.* In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney's qualifications, reasonableness of the attorney's fees, and the basis for the opinion, may be sufficient to support an award of attorney's fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, no writ) ("Where . . . trial counsel's testimony concerning attorneys' fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law."). "The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (emphasis added).

In support of its request for attorney's fees, PLS submits the Declaration of S. David Smith ("Mr. Smith"). *See* Ex. E to Pl.'s Mot. Default J. (Doc. 17-8). According to Mr. Smith's Declaration and the exhibits attached to it, he is a partner at the law firm of Bradley Arant Boult

---

[2] The court has also taken into account and applied the *Johnson* factors. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. District courts "need not specifically discuss the *Johnson* factors where [they have] applied the *Johnson* framework." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

**Memorandum Opinion and Order – Page 7**

Cummings LLP and represented PLS in connection with this civil action. He states that he was assisted by another partner, Robert H. Ford ("Mr. Ford"), as well as three associates—Melissa Gutierrez ("Ms. Gutierrez"), David Miller ("Mr. Miller"), and Andrew Stubblefield ("Mr. Stubblefield")—and Matthew Hu ("Mr. Hu"), a paralegal. Mr. Smith states that he has been practicing law in the State of Texas for over thirty years. Although not stated in Mr. Smith's Declaration, pursuant to Federal Rule of Evidence 201, the court takes judicial notice that Mr. Ford has been licensed to practice law in the State of Texas since November 5, 2010; that Mr. Stubblefield has been licensed to practice law in the State of Texas since August 3, 2010; that Ms. Gutierrez has been licensed to practice law in the State of Texas since November 1, 2013; and that Mr. Miller has been licensed to practice law in the State of Texas since November 2, 2018. *See* www.TexasBar.com.

According to Mr. Smith's Declaration, he "charged discounted billable rates in this matter for all timekeepers." Smith Decl. ¶ 11. He charged $350 per hour for his time; $300 per hour for the time of his partner, Mr. Ford; $275 per hour for associates Mr. Stubblefield and Ms. Gutierrez; $250 per hour for associate Mr. Miller; and $150 per hour for paralegal Matthew Hu. Mr. Smith asserts, and the court agrees based on its extensive experience in awarding attorney's fees in numerous prior cases over the years, that the hourly rates for the services performed in this case are reasonable, as the hourly rates are within the range of the usual and customary rate charged by attorneys and paralegals in the Dallas legal community with similar ability, competence, experience, and skill as that of PLS's attorneys and paralegal for the services performed in cases of this nature.

The invoices filed in support of Mr. Smith's request for attorney's fees show that the attorneys and paralegal expended a total of 64.8 hours working on this case for a total of $15,675. For the reasons that follow, however, the court will deduct the hours PLS expended on

**Memorandum Opinion and Order – Page 8**

unsuccessful legal services from the lodestar. *See, e.g., Ultimate Living Intern., Inc. v. Miracle Greens Supplements, Inc.*, Civil Action No. 3:05-CV-1745-M, 2008 WL 11424147, at *6 (N.D. Tex. Aug. 29, 2008) ("Defendant next seeks to exclude time spent by Plaintiff on its unsuccessful Motion to Quash the Subpoena[.] The Court agrees that this time should be excluded."); *Leroy v. City of Houston*, 906 F.2d 1068, 1084-85 (5th Cir. 1990) (denying a fee award for efforts expended on an unsuccessful motion for post-judgment interest).

Mr. Smith states in his Declaration, and the invoices support, that 10.1 hours were spent by Mr. Smith and the other attorneys "researching and preparing a Motion for Entry of Default Judgment, along with all necessary declarations and exhibits, at a total billed amount of $3,030 (excluding expenses)." Smith Decl. ¶ 10. As previously noted, the court denied PLS's original motion for default judgment because it failed to allege in its Original Complaint or provide any basis for the court to conclude that PLS Check Cashers assigned, transferred, and conveyed all right, title, and interest arising from or relating to the checks to PLS. *See* Mem. Op. & Order 7 (Doc. 11). As such, the court concludes that PLS is not entitled to recover its attorney's fees for the 10.1 billable hours spent preparing the unsuccessful first motion for default judgment. These sums were neither reasonable nor necessary, as they were premised on a pleading that failed to state a claim.

Following the court's deduction, the court recalculates the lodestar based on the remaining amount of time expended (54.7 hours), resulting in reasonable attorney's fees in the amount of $12,645. This amount is reasonable, considering that the record reflects that PLS moved for entry of default and default judgment after Amazing Contractors failed to respond to the Amended Complaint; and PLS's counsel successfully prosecuted this case and obtained a default judgment.

Further, although Mr. Smith does not specifically state in his Declaration that counsel exercised billing judgment, he does state that he "charged discounted billable rates in this matter

**Memorandum Opinion and Order – Page 9**

for all timekeepers." Smith Decl. ¶ 11. The court concludes that charging discounted billable rates is sufficient in this case to satisfy the requirement that an applicant exercise billing judgment. Accordingly, the court determines that PLS is entitled to an award of attorney's fees in the amount of **$12,645** ($15,675 – $3,030).

### E. Prejudgment and Postjudgment Interest

Prejudgment interest rates are governed by state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). Because this is a diversity case in which Texas law applies, Texas law governs prejudgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011). "The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)). "[S]tatutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *International Turbine Servs., Inc.*, 278 F.3d at 499. Because the claims in this case do not fall within the statutory provisions, prejudgment interest in this case is governed by Texas common law. *Id.* "Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract." *Id.* When, as here, an interest rate is not specified in the parties' contract, prejudgment interest is calculated based on the statutory rate for postjudgment interest provided in section 304.003 of the Texas Finance Code. *Id.* Section 304.003 of the Texas Finance Code provides, in pertinent part, that the postjudgment interest rate is "(1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation"; [or] (2) "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" Tex. Fin. Code Ann. § 304.003(c)(2). The current

**Memorandum Opinion and Order – Page 10**

prime rate is 5.50%, which is greater than five percent. Accordingly, the prejudgment interest rate that the court will apply is 5.50% per annum.

The Texas Finance Code not only sets the rate of prejudgment interest, but also states that prejudgment interest begins to accrue on the earlier of (1) 180 days after the date the defendant received written notice of the claim or (2) the date suit is filed, and "end[s] on the day preceding the date judgment is rendered." Tex. Fin. Code Ann. § 304.104. Prejudgment interest accrues only on the damages awarded and not on Plaintiff's award for attorney's fees. *See Cushman & Wakefield, Inc. v. Fletcher*, 915 S.W.2d 538, 547 (Tex. App.—Dallas 1995, writ denied) (holding prejudgment interest is not recoverable on attorney's fees awarded).

Here, PLS requests that prejudgment interest begin to accrue on the date suit was filed, December 31, 2019.[3] As PLS has not provided any evidence of the date Amazing Contractors received "written notice of the claim," the court will calculate prejudgment interest on the amount owed (**$146,728**) by Amazing Contractors for the wrongfully dishonored three checks at a rate of **5.50%** from December 31, 2019, to September 12, 2022, and award PLS prejudgment interest in the amount of **$21,800.16.**

Finally, federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961. The statute grants interest "from the date of the entry of the judgment" at a rate "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date

---

[3] The record includes a written notice seeking payment of the amount of the three checks dated October 3, 2019, from counsel for PLS to an attorney whom he believed represented Amazing Contractors. *See* Doc. 12-4. The record, however, does not reflect any authority on the part of the attorney to whom the notice was sent to represent Amazing Contractors. As there is no proof that the attorney who received notice was an attorney for Amazing Contractors, the attorney did not appear of record for Amazing Contractors, and there is no proof that Amazing Contractors received the written notice, the prejudgment interest runs from the date suit was filed and not from the date of the notice sent to a potentially misidentified attorney. *See Lee v. Fenwick*, 907 S.W.2d 88, 89 (Tex. App.—Eastland 1995, writ denied) (holding that sending notice to an attorney not of record for the defendants does not provide notice "written notice of a claim" to the "defendant.").

**Memorandum Opinion and Order – Page 11**

of the judgment." 28 U.S.C. § 1961(a). Postjudgment interest compounds annually and is "computed daily to the date of payment." *Id.* § 1961(b). The principal for calculating postjudgment interest is "the entire amount of the final judgment," including attorney's fees, costs, and prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). The postjudgment interest amount for the calendar week preceding the date of judgment is 3.48 percent. United States District Court for the Northern District of Texas, Publications - Post Judgment Rate (September 12, 2022), http://www.txnd.uscourts.gov/publications/pjrate.html (reporting that the current postjudgment interest rate from September 5, 2022, to September 11, 2022 is 3.48 percent). Postjudgment interest will apply to the total amount of the judgment and will be calculated from the date judgment is entered at the applicable federal rate of 3.48% until it is paid in full.

### III. Conclusion

For the reasons explained, Plaintiff's Motion for Default Judgment (Doc. 17) is **granted**. Accordingly, the court will enter a default judgment in favor of Plaintiff in the amount of **$146,728** in actual damages, plus **$21,800.16** in prejudgment interest on this amount calculated at a rate of **5.50%** per annum from December 31, 2019, to September 12, 2022; reasonable attorney's fees in the amount of **$12,645**, and postjudgment interest on the entire amount of the judgment (**$181,173.16**) at the current federal rate of **3.48%** per annum from the date of judgment until it is paid in full. The court also taxes all reasonable and allowable costs against Defendant. All other relief not expressly granted is **denied.** In accordance with Rule 58 of the Federal Rules of Civil Procedure, a default judgment will issue by separate document.

**It is so ordered** this 13th day of September, 2022.

Sam A. Lindsay
United States District Judge